IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

VERONICA DAVIS,

    Plaintiff,

v.                                              Case No. 2:19-mc-00009

CONN APPLIANCES, INC.,

    Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO ABATE AND MOTION TO DISMISS**

Plaintiff ("Davis") opposes Defendant's (Conn's") Motion to Abate Action and Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7) and in support states:

### Introduction

In 2015, Plaintiff Veronica Davis ("Davis") entered into a contract with Defendant Conn Appliances, Inc. ("Conn's") for the purchase of some furniture at a Conn's store in Memphis, Tennessee. (Doc. 1-1). The contract was Conn's standard Tennessee Retail Installment Contract. It contained a clause requiring disputes between Davis and Conn's to be submitted to arbitration.

In November 2017, Davis filed a Demand for Arbitration against Conn's with the American Arbitration Association (AAA). Davis sought damages against Conn's for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA).

In February 2019, AAA Arbitrator Michael L. Russell held a final, in-person arbitration hearing in Memphis, Tennessee. The arbitration was held in Memphis, Tennessee because that is where Davis resides and the arbitration agreement between the parties requires any arbitration hearing to take place near her residence.

1

On March 25, 2019, the arbitrator entered an award in favor of Davis. That same day, Davis filed the instant action to confirm the arbitration award pursuant to 9 U.S.C. § 9. Also that day, less than 15 minutes before Davis applied to confirm the arbitration award and unbeknownst to Davis at the time, Conn's moved to vacate the award in the United States District Court for the Southern District of Texas.

Four days later, on March 29, 2019, Conn's filed a motion to stay the Texas proceedings. On April 3, 2019, Davis served Conn's with process in this action. (Doc. 6). On April 8, 2019, the Southern District of Texas court granted Conn's motion to stay the Texas proceedings and administratively closed the case. It was not until three days later that Davis was served process in the Texas case.

Now, in its most recent attempt at undue delay, Conn's seeks to have this matter abated in favor of the stayed action in Texas, or dismissed entirely for lack of personal jurisdiction. For the reasons below, Davis opposes Conn's motions and respectfully asks that the Court deny Conn's motion.

## **Argument and Authority**

Conn's motion to dismiss for lack of personal jurisdiction should be denied. This Court has personal jurisdiction over Conn's because:

1) Conn's voluntarily participated in an arbitration that was held in this jurisdiction, and Plaintiff's action to confirm the resulting award in this district arises from the arbitration agreement, and not from Plaintiff's underlying TCPA claim under traditional personal jurisdiction standards;

2) 9 U.S.C. § 9 of the Federal Arbitration Act provides this Court with personal jurisdiction over Conn's;

3) Conn's agreed to personal jurisdiction in this district by the language of its agreement with Davis; and

4) Conn's consented to this Court's jurisdiction by failing to object to the location of the arbitration and by participating in the arbitration.

**1)   This Court has specific personal jurisdiction over Conn's because Conn's voluntarily participated in an arbitration that was held in this jurisdiction, and Plaintiff's action to confirm the resulting award in this district arises from the arbitration agreement, and not from Plaintiff's underlying TCPA claim.**

In *Plaintiff's Application to Confirm Arbitration Award* (Doc. 1), Plaintiff alleged this Court's subject matter jurisdiction is based on both diversity jurisdiction *and* federal question jurisdiction. Plaintiff got the law wrong. After that realization the language, purpose, and judicial interpretations of 9 U.S.C. § 9 made much more sense. And so, Plaintiff begins with this point of argument:

The instant action is an application to confirm an arbitration award under 9 U.S.C. § 9. While Plaintiff alleged this Court's subject matter jurisdiction is based on both diversity under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331, Plaintiff was mistaken. Binding Sixth Circuit precedent has consistently found that this Court's subject matter jurisdiction rests solely on diversity:

> [I]t is well established that the Federal Arbitration Act does not create any independent federal question jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1982) (The FAA creates "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed. Supp. V) or otherwise.") Likewise, we have held that **the federal nature of the underlying claims submitted to arbitration does not confer federal question jurisdiction over a suit to confirm an arbitration award since the rights asserted "are actually based on the contract to arbitrate rather than on the underlying substantive claims."** *Detroit Pension Fund v.*

3

> *Prudential Sec., Inc.*, 91 F.3d 26, 29 (6th Cir. 1996), *cert. denied*, 117 S. Ct. 1252 (1997). *See also Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 94 (6th Cir. 1997); *Collins v. Blue Cross Blue Shield of Michigan*, 103 F.3d 35, 38 (6th Cir. 1996); [*Ford v. Hamilton Inv., Inc.*, 29 F.3d 255, 257-58 (6th Cir. 1994)].

*Am. Fed'n of TV & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1007-08 (6th Cir. 1999).

Plaintiff mistakenly believed this Court had federal question jurisdiction due to the nature of the underlying TCPA claim, which arises from a federal statute. But, as the Sixth Circuit explained, that is not the proper analysis. Instead, Plaintiff's action to confirm the arbitration award arises from the contract to arbitrate, and not the underlying TCPA claim.

Conn's personal jurisdiction argument ultimately fails because it is based on the same misunderstanding. *See* Conn's Motion to Dismiss (Doc. 7) at p. 4 ("When a federal court's subject matter jurisdiction over a proceeding arises out of a federal question, as is the case here, […]"). The rights asserted in Davis' application to confirm the arbitration award *do not* arise out of the TCPA, but "are actually based on the contract to arbitrate rather than on the underlying substantive claims." *Id.*

Under this correct view, there is no doubt that Davis' application to confirm the award contains sufficient jurisdictional allegations, and that exercising jurisdiction comports with constitutional due process. To make that determination, courts employ a three-step analysis: 1) whether the defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) whether the cause of action arose from the defendant's activities there; and 3) whether the defendant's acts have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

In making such determination, the Court is permitted to consider a copy of any written instruments attached as exhibits to a pleading as a part of the pleading for all purposes under Fed. R. Civ. P. 10(c); *see also Campbell v. Nationstar Mortg.*, No. 14-1751, 611 Fed. Appx. 288, 291-92 (6th Cir. May 6, 2015) (holding that "[i]n ruling on a motion to dismiss, the court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes.").

Here, the Court need not look any further than *Plaintiff's Application to Confirm Arbitration Award* (Doc. 1) and the attached exhibits – the Retail Installment Contract (Doc. 1-1) and the Arbitration Award (Doc. 1-2) to find more than sufficient evidence to exercise personal jurisdiction over Conn's.

The instant action is an application to confirm an arbitration award. (Doc. 1). The arbitration hearing was conducted in Tennessee pursuant to a contract that Conn's drafted, signed by a Conn's employee, inside a Conn's store in Memphis, Tennessee. (Doc. 1-1; 1-2). The contract containing the arbitration clause was a contract for the purchase of physical goods located inside a Conn's brick-and-mortar store in Memphis, Tennessee. (Doc. 1-1). The other party to the contract was Davis, a lifelong resident of Memphis, Tennessee. *Id.* Within the contract, Davis provided Conn's with her Tennessee cellular telephone number, which begins with (901) – a Tennessee area code. *Id.*

Also within the contract, Davis provided Conn's with her local Memphis, Tennessee address. *Id.* Per the terms of the contract Conn's drafted and presented to Davis to sign, disputes between the parties would be submitted to arbitration and "Any arbitration will take place near [Davis'] residence." *Id.* at 2.

5

Accordingly, the arbitration was held, in person, in Memphis, Tennessee. (Doc. 1-2). Conn's attended and participated in the arbitration, in person, through its attorneys and corporate representative. *Id.* Conn's never objected to the location of the arbitration. The arbitration award was issued in Memphis, Tennessee. *Id.*

### a. Conn's purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the Western District of Tennessee.

Conn's contracted with Davis for the sale of goods in Memphis, and presented Davis with a contract that called for arbitration between the parties to be held near Davis' residence, which the same contract listed as Memphis, Tennessee. When Conn's voluntarily entered into the contract with Davis, it knew that a dispute between them would be arbitrated in Memphis, Tennessee. And when the arbitration hearing was set for Memphis, Tennessee, Conn's did not object. *See, e.g., Kirby McInerney LLP v. Lee Med., Inc.*, No. 17-cv-4760 (KBF), 2017 U.S. Dist. LEXIS 171450, at *13 (S.D.N.Y. 2017) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.") (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996)).

### b. The cause of action arose from Conn's activities in the Western District of Tennessee.

As the Sixth Circuit has repeatedly explained, the cause of action does not arise from the underlying claim but rather from the contract to arbitrate itself. Davis' action to confirm the arbitration award arises from the arbitration contract entered into in Tennessee, and the arbitration hearing conducted in Tennessee. But for the arbitration, Davis would have no cause to confirm the award. *See, e.g.*, *Am. Fed'n of TV & Radio Artists*, 164 F.3d at 1007-08 (6th Cir. 1999) ("Likewise, we have held that the federal nature of the underlying claims submitted to arbitration does not confer federal question jurisdiction over a suit to confirm an arbitration

6

award since the rights asserted 'are actually based on the contract to arbitrate rather than on the underlying substantive claims.'").

### c. Conn's acts have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable.

Conn's contract required arbitration in Memphis, Tennessee. Conn's participated in the arbitration, in person, without objection. Conn's acts have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *See, e.g., Weststar Assocs., Inc. v. Tin Metals Co.*, 752 F.2d 5, 7 (1st Cir. 1985) ("[Defendant] consented to the Boston locale by not objecting as provided in Rule 11, and by itself participating in the arbitration. The occurrence of the arbitration in Boston was clearly an event of sufficient significance to allow Congress to provide for enforcement in the District of Massachusetts[.]")

As demonstrated above, there are sufficient allegations in Davis' application and accompanying exhibits to establish this Court has specific jurisdiction over Conn's. Moreover, when considering the language, purpose and judicial interpretations of 9 U.S.C. § 9 in this correct context, it makes practical sense.

### 2) 9 U.S.C. § 9 of the Federal Arbitration Act provides this Court with personal jurisdiction over Conn's.

The contract between Davis and Conn's contains an arbitration clause that states "This arbitration clause shall be governed by the Federal Arbitration Act." (Doc. 1-1 at p. 2). Davis seeks to confirm her arbitration award against Conn's pursuant to § 9 of the Federal Arbitration Act. Section 9 begins by stating:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award.

7

*Id.* That makes sense because personal jurisdiction is a personal right that can be waived or consented to by contract. *Guardsmark (P.R.), LLC v. Miramar Real Estate Mgmt.*, No. 2:08-CV-2317, 2008 U.S. Dist. LEXIS 129987, at *8 (W.D. Tenn. 2008) ("Personal jurisdiction is a waivable right. Thus, 'a litigant may give express or implied consent to the personal jurisdiction of the court.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)).

Then, 9 U.S.C. § 9 goes on to address the situation in this case, where no court has been specified for the entry of judgment on the award:

> If no court is specified in the agreement of the parties, then such application may be made to **the United States court in and for the district within which such award was made.** Notice of the application shall be served upon the adverse party, and thereupon **the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.**

*Id.* (emphasis added). This provision ensures that in the absence of an agreement between the parties as to a specific court, there *will* be a court where an application to confirm the award can be made. *See Weststar*, 752 F.2d at 7 ("9 U.S.C. § 9 was precisely meant to enable the district court for the district within which the award was made to exercise personal jurisdiction over the parties to the award.").

In this case, the agreement between Conn's and Davis specified that the arbitration would be held near Davis' residence, but it did not specify the court where an application to confirm the award must be made. (Doc. 1-1 at p. 2). Accordingly, the application may be made to "the United States court in and for the district within which" the award was made: this Court.

Notice of the application was served upon Conn's on April 3, 2019. (Doc. 6). Therefore, this Court has personal jurisdiction over Conn's "as though [Conn's] had appeared generally in the proceeding." 9 U.S.C. § 9; *see also*, *Colavito v. Hockmeyer Equip. Corp.*, 605 F. Supp. 1482, 1485 (S.D.N.Y. 1985) ("Thus, Congress has manifested its intention to permit a federal court

8

sitting in the district where the arbitration award was rendered to exert personal jurisdiction over the party opposing confirmation, wherever that party may be found.").

**3)  This Court has personal jurisdiction over Conn's because Conn's agreed to personal jurisdiction in this district by the language of its agreement with Davis.**

The language of the arbitration agreement provides that the arbitration will be conducted near Davis' residence. (Doc. 1-1 at p. 2) ("Any arbitration will take place near your residence."). The contract lists Davis' residence as Memphis, Tennessee. (Doc. 1-1 at p. 1). "A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction." *Kirby McInerney LLP*, 2017 U.S. Dist. LEXIS 171450, at *13 (quoting *Doctor's Assocs.*, 85 F.3d at 983). "When a party agrees 'to arbitrate in [a state], where the [Federal Arbitration Act] makes such agreements specifically enforceable, [that party] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in [that state]. To hold otherwise would be to render the arbitration clause a nullity.'" *Doctor's Assocs.*, at 979; *see also St. Paul Fire & Marine Ins. Co. v. Courtney Enters.*, 270 F.3d 621, 624 (8th Cir. 2001) ("[I]f the court in the selected forum did not have personal jurisdiction to compel arbitration, the agreement to arbitrate would be effectively unenforceable, contrary to the strong national policy in favor of arbitration.").

In other words, by contractually agreeing to arbitration in the Western District of Tennessee, Conn's consented to this Court's personal jurisdiction over it. To find otherwise would mean that if Conn's refused to arbitrate Davis' claims, she would need to sue Conn's in the Southern District of Texas to compel an arbitration to be held in the Western District of Tennessee, then return to the Southern District of Texas to confirm the award. That conclusion would be entirely inconsistent with the FAA's goal of the efficient resolution of claims. *See Humility of Mary Health Partners v. Teamsters Local Union No. 377*, 517 F. App'x 301, 302 (6th

9

Cir. 2013) (describing "the essential point of arbitration" as "an inexpensive, speedy alternative to litigation.").

**4)    This Court has personal jurisdiction over Conn's because Conn's consented to this Court's jurisdiction by failing to object to the location of the arbitration and by participating in the arbitration.**

As the United States Court of Appeals for the First Circuit explained in *Weststar Assocs., Inc. v. Tin Metals Co.*:

> [Defendant] consented to the jurisdiction of the district court by agreeing to settle any disputes arising out of the contract according to the AAA Rules, which, as we have seen, provide that a party shall be deemed to have consented to the enforcement of the award in any state or federal court having jurisdiction thereof. Although the contract did not specify where the arbitration would take place, [Defendant] consented to the Boston locale by not objecting as provided in Rule 11, and by itself participating in the arbitration. Boston was clearly an event of sufficient significance to allow Congress to provide for enforcement in the District of Massachusetts, and there is no question but that [Defendant] was adequately notified and served with process. In these circumstances, and given the independent basis for federal subject matter jurisdiction, the district court clearly had jurisdiction under the express language of section 9 to enforce the award against [Defendant].

752 F.2d 5, 7-8 (1st Cir. 1985). In this case, just like in *Weststar*, Conn's agreed to arbitration in the Western District of Tennessee, and participated in a final hearing in this district. Therefore, just like in *Weststar*, Conn's consented to this Court's jurisdiction to enforce the award against Conn's.

## CONCLUSION

Defendant has not cited to a single case that found that the court in the district where the arbitration award was issued (with subject matter jurisdiction) did not have jurisdiction over the parties to confirm the award. The point of 9 U.S.C. § 9 is to make sure of that. For all the reasons

Case 2:19-mc-00009-JTF   Document 8   Filed 05/03/19   Page 11 of 12   PageID 58

above, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss in its entirety.

Plaintiff also requests that this Court deny Defendant's request to abate, or stay, or postpone Ms. Davis' relief any longer. Conn's action to vacate the award in the Southern District of Texas cannot be sustained because that court lacks personal jurisdiction over Davis under the same analysis above.

More than 18 months have passed since Davis demanded arbitration. Conn's got the arbitration it wanted in Memphis, Tennessee, without objection. That arbitrator issued a reasoned opinion and award. This Court has jurisdiction to confirm that award and there's no good-faith argument that any other court in the world does.

Respectfully submitted,

/s/ Frank H. Kerney, III, Esq.
**FRANK H. KERNEY, III, ESQ.** (TBN 035859)
MORGAN & MORGAN, TAMPA, P.A.
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 577-4729
fkerney@forthepeople.com
snazario@forthepeople.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on May 3, 2019, a copy hereof was (is being) filed with the Clerk of Court via CM/ECF system, which will generate a Notice of Electronic Filing to all counsel of record, including:

**Robert A. Luskin, Esq.**
GOODMAN MCGUFFEY, LLP
2100 Tower Place
Atlanta, GA 30326
Tele:  (404) 264-1500
Fax:  (404) 264-1737
Email:  rluskin@gm-llp.com
*Attorney for Defendant*

/s/ Frank H. Kerney, III, Esq.
**FRANK H. KERNEY, III, ESQ.** (TBN 035859)
*Certifying Attorney*